Adam S. Katz, Esq.
Goldberg Segalla, LLP
711 Third Avenue, Ste. 1900
New York, NY 10017
*Attorney for Ralph Mannetta, RVM Marine Construction,*
*Joseph Goldberger, Ultimate Truck and Equipment, Joseph Natoli,*
*And Project PE Engineer*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------      x
ATLANTIC PILE, INC.,

                                                              Case No. 1:21-cv-03593

                             Plaintiff,

                  -against-

RALPH MANNETTA, RVM MARINE CONSTRUCTION,
SUNLIGHT also known as SUNLIGHT CLINTON
REALTY, LLC, JOSEPH GOLDBERG, ULTIMATE
TRUCK AND EQUIPMENT, and JOSEPH NATOLI,
PROJECT PE ENGINEER,
                               Defendants.
------------------------------------------------------------------------      X


**Memorandum of Law in Support of Defendant Mannetta and RVM Marine Construction's**
**Opposition to Plaintiff's Motion for a Preliminary Injunction and**
**In Support of Defendant Mannetta and RVM Marine Construction's**
**<u>Cross-Motion for An Order of Attachment And a Maritime Lien</u>**


Dated: August 3, 2021

TABLE OF CONTENTS

PRELIMINARY STATEMENT...................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 3

ARGUMENT ................................................................................................................................ 3

   I.    PLAINTIFF'S MOTION SEEKING A PRELIMINARY INJUNCTION SHOULD BE DENIED 3

     A.  The Applicable Legal Standard Supports Denial of the Mandatory Preliminary Injunction that Plaintiff Seeks ............................................................................................................................... 3

     B.  Plaintiff Has Utterly Failed to State a Viable Cause of Action Let Alone Demonstrated a Likelihood of Success on the Merits ................................................................................................... 5

     C.  Plaintiff Has Not Suffered Any Irreparable Harm ....................................................... 8

     D.  The Balancing of Equities Does Not Favor Plaintiff and There is No Public Interest in This Mandatory Injunction.......................................................................................................... 11

   II.   THE PRELIMINARY INJUNCTION MUST BE DENIED BECAUSE IF WOULD NULLIFY THE AUTOMATIC LIEN ASSERTED PURSUANT TO SECTION 180 OF THE NEW YORK LIEN LAW ........................................................................................................................................... 12

   III.  THE COURT SHOULD GRANT RVM DEFENDANT'S MOTION FOR AN ORDER OF ATTACHMENT....................................................................................................................... 13

   IV.  RVM IS ENTITLED TO A MARITIME LIEN PURSUANT TO THE SUPPLEMENTAL MARITIME RULES........................................................................................................................ 17

CONCLUSION........................................................................................................................... 18

30784612.v1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Ins. Co. v. Capasso*,
    75 N.Y.2d 860 (1990)...................................................................................4

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
    460 F.3d 434 (2d Cir. 2006) ........................................................................17

*Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*,
    543 B.R. 78 (S.D.N.Y. 2016) .......................................................................12

*Barchha v. TapImmune, Inc.*,
    2013 WL 120639 (S.D.N.Y. Jan. 7, 2013) ....................................................7

*Borey v. Natl. Union Fire Ins. Co. of Pittsburgh*,
    934 F.2d 30 (2d Cir. 1991) ............................................................................9

*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. 2011) .................................................................4, 5, 8

*Capital Ventures Intl. v. Republic of Argentina*,
    443 F.3d 214 (2d Cir. 2006) ........................................................................13

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018) ..........................................................................6

*Diamond v. Gemological Inst. of Am.*,
    2012 WL 12874273 (S.D.N.Y. Nov. 14, 2012)..............................................9

*Diversified Mortg. Invrs v. U.S. Life Ins. Co. of New York*,
    544 F.2d 571 (2d Cir. 1976) ..........................................................................7

*Doe v. Axelrod*,
    73 N.Y.2d 748 (N.Y. 1988) ...........................................................................4

*Doe v. Paychex, Inc.*,
    2020 WL 219377 (D. Conn. Jan. 15, 2020) ................................................11

*Dong v. Miller*,
    16-CV-5836, 2018 U.S. Dist. LEXIS 48506 (E.D.N.Y Mar. 23, 2018)............11

*Firemen's Ins. Co. of Newark, New Jersey v. Keating*,
    753 F. Supp. 1146 (S.D.N.Y. 1990) ............................................................10

*Gagnon Bus Co., Inc. v. Vallo Transportation*,
    13 A.D.3d 334 (2nd Dept. 2004)....................................................................4

30784612.v1

*Greenidge v. Allstate Ins. Co.*,
No 02-CV-9796 (JCF), 2003 U.S. Dist. LEXIS 21733, 2003 WL 22871905
(S.D.N.Y. Dec. 3, 2003) ..................................................................................................... 11

*Ina Bus. Machines Corp. v. Johnson*,
629 F. Supp. 2d 321 (S.D.N.Y.), affd 355 F. Appx. 454 (2d Cir. 2009) ............................ 11

*ITC Entertainment Ltd. v. Nelson Film Partners*,
714 F.2d 217 (2d Cir. 1983) ............................................................................................... 13

*JSC Foreign Economic Assn. Technostroyexport v. International Development and Trade Services, Inc.*,
306 F.Supp.2d 482 (S.D.N.Y. 2004) .................................................................................. 14

*Kamerling v. Massanari*,
295 F.3d 206 (2d Cir. 2002) ............................................................................................. 8, 9

*Kilfoil v. Ullrich*,
275 A.D.2d 53 (N.Y. App. Ct. 2d Dept. 2000) ................................................................... 17

*Krust Patties, Inc. v. Bullock*,
957 F. Supp. 2d 186 (E.D.N.Y. 2013) .................................................................................. 4

*Lankau v. Luxoft Holding, Inc.*,
266 F. Supp. 3d 666 (S.D.N.Y. 2017) .................................................................................. 7

*Lanvin, Inc. v. Colonia, Inc.*,
739 F. Supp. 182 (S.D.N.Y. 1990) ...................................................................................... 10

*Litho Prestige v. News America Pub., Inc.*,
652 F. Supp. 804 (S.D.N.Y. 1989) ...................................................................................... 10

*Nobu Next Door, LLC v. Fine Arts Housing, Inc.*,
4 N.Y.3d 839, 800 N.Y.S.2d 191 (N.Y. 2005) .................................................................... 4

*Rattner & Assoc. v. Sears, Roebuck & Co.*,
294 A.D.2d 346 (2d Dept. 2004) .......................................................................................... 4

*Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.*,
1986 U.S. Dist. LEXIS 22175, 1986 WL 13950 (E.D.N.Y. Sep. 9, 1986) ......................... 10

*Reuters Ltd. v. United Press Intern., Inc.*,
903 F.2d 904 (2d Cir. 1990) ............................................................................................... 10

*Robins v. Zwerner*,
713 F. Supp. 2d 367 (S.D.N.Y. 2010) ................................................................................ 11

*New York ex rel. Schneiderman v. Actavis PLC*,
787 F.3d 638 (2d Cir. 2015) ................................................................................................. 4

*WarnerVision Entmt. Inc. v. Empire of Carolina, Inc.*,
101 F.3d 259 (2d Cir. 1996) ................................................................................................. 7

iv

*Westchester Fire Ins. Co. v. DeNovo Constructors, Inc.*,
  177 F. Supp. 3d 810 (S.D.N.Y. 2016) ................................................................. 10

*Yang v. Kosinski*,
  960 F.3d 119 (2d Cir. 2020) ............................................................................. 5

*Ying Fung Moy v. Hohi Umeki*,
  10 A.D.3d 604 (2d Dept. 2004) ......................................................................... 4

**Statutes**

New York Lien Law § 180 .................................................................................. *passim*

**Other Authorities**

CPLR § 6201 ...................................................................................................... *passim*

CPLR § 6201(1) ........................................................................................... 3, 13, 16

CPLR § 6201(1) and (3) ..................................................................................... 1, 2, 13

CPLR § 6201(3) ........................................................................................... 3, 13, 16

CPLR § 6212 .................................................................................................... 13

CPLR § 6212(a) ............................................................................................... 13

FRCP 64(a) ..................................................................................................... 13

30784612.v1

Defendants Ralph Mannetta and RVM Marine Construction ("RVM") (collectively, the "RVM Defendants") respectfully submit this memorandum of law and response in support of their opposition to Plaintiff's motion for a preliminary injunction and in support of its motion for a lien pursuant to the Supplemental Rules for Admiralty and Maritime Claims (the "Supplemental Maritime Rules"), and an order of attachment pursuant to CPLR 6201(1) and 6201(3).

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff Atlantic Pile, Inc. ("Plaintiff" or "Atlantic Pile") was retained by RVM as a sub-contractor to perform steel work for the construction of a boardwalk abutting navigable waters in Brooklyn, New York.  After Atlantic Pile misrepresented its skills, experience, and capacity in order to induce RVM to hire Atlantic Pile; utterly failed to perform the work it agreed to perform; had RVM spend $45,000 to transport and repair Atlantic Pile's equipment; sold RVM corroded unusable steel; and ultimately abandoned the project and its equipment, Atlantic Pile has the audacity to seek a mandatory preliminary injunction.

Plaintiff's motion seeking a mandatory preliminary injunction should be denied, because Plaintiff has not met one of the criteria necessary for the Court to award such extraordinary relief. Firstly, Plaintiff is not likely to succeed on the merits of its action.  As an initial matter the Complaint does not state any cognizable cause of action let alone a cause of action wherein it will be successful.  Additionally, Plaintiff's proposed preliminary injunction seeks the ultimate relief at issue in this case—return of Plaintiff's construction equipment, which is inappropriate for a preliminary injunction.  Most importantly, this case stems from Atlantic Pile's failure to perform under a construction contract, largely because Atlantic Pile's equipment—a specialty Kobelco crawler crane—was non-operational.  So as not to cause further delays to the construction project, which Atlantic Pile already delayed, RVM spent $22,000, with Atlantic Pile's consent, to repair

the crane.  Pursuant to New York Lien Law § 180, Plaintiff is entitled to retain Atlantic Pile's equipment until the repairs are paid.  A preliminary injunction would nullify the effect of New York Lien Law and give Atlantic Pile a windfall—a repaired crane paid for by RVM—which would be improper.

      With respect to the other requirements for preliminary relief, the single most important element is showing irreparable harm.  Atlantic Pile cannot do that here. Atlantic Pile, through its counsel, had admitted that this is a civil dispute over money, which makes a preliminary injunction improper.  Plaintiff only provides a conclusory allegation that its business is suffering without use of its crane, but such non-specific allegations do not demonstrate that any harm is actual or imminent, as it is required to do to show adequate irreparable harm.  There are no allegations of how Atlantic Pile's business is impacted or how much business was lost.  Indeed, Atlantic Pile tries to simultaneously and incongruously argue that it has lost revenue from renting the equipment, but it needs the equipment for other projects.  Furthermore, Atlantic Pile abandoned this project in mid-March and it first brought this application for preliminary relief four months later in July—further demonstrating that any harm is not irreparable.

      The balancing of the equities and public policy concern favors denying the preliminary injunction.  RVM has a strong interest in keeping the crane that it paid to repair; this interest is recognized under New York Lien Law § 180.  Additionally, a private dispute such as this does not concern public policy, but in general there is a general event for Court not to enable debtors to avoid paying their debts.  Accordingly, the final two elements for a mandatory preliminary injunction favor denial.

      Finally, RVM Defendants cross-moves for two provisional remedies from the Court.  Firstly, an order of attachment pursuant to CPLR 6201(1) and 6201(3) is appropriate.  The RVM

Defendants have demonstrated that it is likely to succeed on the merits of its counterclaims for unjust enrichment, breach of contract, and fraudulent inducement, those counterclaims exceed the value of Atlantic Pile's potential recovery, and Atlantic Pile is a foreign corporation of New Jersey not registered to do business in New York.  Accordingly, an order of attachment is appropriate under CPLR 6201(1).  An order of attachment is also appropriate under CPLR 6201(3).  It is clear by Plaintiff's admission that Atlantic Pile intends to remove one of its main assets to New Jersey with the intent to defraud to RVM out of a potential recovery on the counterclaims.  Indeed, Atlantic Pile has sufficiently alleged a cause of action for fraudulent inducements which is an important factor in demonstrating why an order of attachment under CPLR 6201(3) is appropriate.

Additionally, because Atlantic Pile breached a maritime contract, the Supplemental Maritime Rules apply and RVM is entitled to a lien on Atlantic Pile's equipment until Atlantic Pile pays the money that RVM outlaid to repair Atlantic Pile's crane and transport its equipment.

## STATEMENT OF FACTS

Defendants Ralph Mannetta and RVM relies on the counterclaims, dated August 3, 2021 (Dkt. No. 12) (the "Counterclaims") and the affidavit of Ralph Mannetta, dated August 2, 2021 for a complete recitation of the relevant facts in this action.  These facts demonstrate how Plaintiff abandoned the Project and its Property, how a mandatory preliminary injunction is not proper, and, in fact, the Court should an order of attachment pursuant to CPLR 6201 and a maritime lien pursuant to the Supplemental Maritime Rules.

## ARGUMENT

## I.   PLAINTIFF'S MOTION SEEKING A PRELIMINARY INJUNCTION SHOULD BE DENIED

### A.   The Applicable Legal Standard Supports Denial of the Mandatory Preliminary Injunction that Plaintiff Seeks

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Golden Krust Patties, Inc. v. Bullock,* 957 F. Supp. 2d 186, 192 (E.D.N.Y. 2013) (citations omitted). In order to be entitled to a preliminary injunction, the moving party must show (1) "a probability of success on the merits," (2) "danger of irreparable injury in the absence of an injunction," and (3) "a balance of the equities in its favor." *Nobu Next Door, LLC v. Fine Arts Housing, Inc.,* 4 N.Y.3d 839, 840, 800 N.Y.S.2d 191, 192 (N.Y. 2005); *Aetna Ins. Co. v. Capasso,* 75 N.Y.2d 860 (1990); *Doe v. Axelrod,* 73 N.Y.2d 748 (N.Y. 1988); *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) ("A party seeking a preliminary injunction must show (1) irreparable harm; (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of its claims to make them a fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest.").  The party seeking the preliminary injunction has the burden of establishing a prima facie entitlement to such relief. *Gagnon Bus Co., Inc. v. Vallo Transportation,* Ltd., 13 A.D.3d 334 (2nd Dep't 2004).

The purpose of a preliminary injunction is to maintain the status quo and prevent the dissipation of property that could render a judgment ineffectual. *Ying Fung Moy v. Hohi Umeki*, 10 A.D.3d 604, 604 (2d Dep't 2004); *cf. Rattner & Assoc. v Sears, Roebuck & Co.*, 294 A.D.2d 346 (2d Dep't 2004).

Here, Plaintiff asks for even more than that— it asks for a mandatory injunction to change the status quo, which "is even more extraordinary." *Id.* Plaintiff must therefore meet an "even higher" burden by demonstrating that it is clearly entitled to the relief it seeks. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011). When "the movant is seeking to modify the status quo by virtue of a mandatory preliminary injunction (as opposed to seeking a prohibitory preliminary

injunction to maintain the status quo), or where the injunction being sought will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits, the movant must also: (1) make a strong showing of irreparable harm, and (2) demonstrate a clear or substantial likelihood of success on the merits." *Yang v. Kosinski*, 960 F.3d 119, 128 (2d Cir. 2020). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406; *see also, Levola*, 403 F. App'x at 565. The movant must also show that the "balance of hardships tip[s] decidedly toward the party requesting the preliminary relief." *Cacchillo*, 638 F.3d at 406.

Based on this extraordinarily high standard and Plaintiff's failure to plead a cognizable cause of action and its inability to establish irreparable harm, Plaintiff's motion must be denied.

### B. Plaintiff Has Utterly Failed to State a Viable Cause of Action Let Alone Demonstrated a Likelihood of Success on the Merits

Firstly, there is no likelihood of success on the merits because Plaintiff does not state any causes of action in the Complaint. The Complaint is completely devoid of any reference to specific causes of action against any defendant; but rather, in the "WHEREFORE" provision at the end of the Complaint it requests relief, including, a release of the materials and equipment and monetary damages. Neither Plaintiff nor the Court should be made to guess what Plaintiff alleges as the grounds for the return of its tools and equipment, especially when RVM spent significant time and money to repair Plaintiff's equipment which Plaintiff then abandoned, along with the project at issue, in March 2021. Similarly, this is not a motion to dismiss where all reasonable doubts should be resolved in favor of the Plaintiff. Accordingly, without any causes of action, the Court cannot adequately assess a likelihood of success on the merits.

5

30784612.v1

Moreover, while RVM Defendants should not be made to guess the cause of action that Plaintiff is pleading, to the extent Plaintiff is pleading a breach of contract, per the counterclaims, RVM will be able to demonstrate that Plaintiff breached the contract and utterly failed to perform the construction work related to building the bulkhead that it agreed to perform.  To the extent, Plaintiff is trying to plead a claim for conversion, pursuant to New York Lien Law § 180, RVM is not required to return Plaintiff's equipment, because it expended significant money – in excess of $20,000 to repair and $17,000 to transport Plaintiff's Kobelco Crawler crane and Plaintiff never paid the RVM Defendants for that repair work.  Additionally, if the Court grants RVM Defendant's cross-motions seeking a maritime lien or an order of attachment, those claims would defeat Plaintiff's claims for conversion.  The counter-claims allege that RVM repaired Plaintiff's crane and Plaintiff never paid for those repairs which gives RVM a right to retain the crane.  Counterclaims ¶¶ 31-33.   The counter-claims RVM filed also further attenuate Plaintiff's likelihood of success on the merits as they allege that Plaintiff abandoned the project and left its property at the project site, so there is no unlawful dominion over the crane and other equipment.  Accordingly, even based on surmised causes of action, Plaintiff is not likely to succeed on the merits of its claims.

Secondly, Plaintiff will not succeed on the merits because it has alleged its entire complaint—including damages from lost rental income "upon information and belief."  As counsel for Defendant Sunlight Clinton Realty, LLC pointed out in its pre-motion letter to the Court (Dkt. No. 7), the Second Circuit has held that "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018).  While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the

inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is found". *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 673 (S.D.N.Y. 2017).  Here, there is no factual information supporting any inference of culpability or demonstrating why it is culpable.  Accordingly even if Plaintiff has alleged a cause of action, it would fail because it is improperly alleged entirely "on information and belief."

Thirdly, the preliminary injunction should not be granted because it gives Plaintiff the ultimate relief that it seeks.  "The purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks." *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261–62 (2d Cir. 1996) ("a temporary injunction 'ought not to be used to give final relief before trial'"); *Diversified Mortg. Inv'rs v. U.S. Life Ins. Co. of New York*, 544 F.2d 571, 576 (2d Cir. 1976) (preliminary injunction "is not an adjudication on the merits, and it should not grant relief properly awarded only in a final judgment"); *Barchha v. TapImmune, Inc.*, 2013 WL 120639, at *1 (S.D.N.Y. Jan. 7, 2013) (same).

This is what Plaintiff seeks to do here. The request should be denied on this basis alone. *See, e.g., Barchha*, 2013 WL 120639, at *2 (denying request for mandatory injunction to force defendant to facilitate sale of stock because it "would not be a limited measure to preserve the status quo, but instead equivalent to a final adjudication of the merits of plaintiff's claims). Here, the return of its equipment and tools is the final and ultimate relief that Plaintiff seeks— "defendants release all of plaintiff's material and equipment" (*See* "wherefore" clause of Complaint), which would be final relief for the Plaintiff (and incidentally will allow it to obfuscate one of its assets which would make it considerably difficult for the RVM Defendants to collect on any judgments.

7

Fourthly, Plaintiff's claims fail because they have failed to name a necessary party—Hughes Marine Contracting.  If the tools and material at issue are on a barge owned by Hughes Maine Contracting-- as Plaintiff's owner and sole shareholder acknowledges in his affidavit (Merlette Aff. ¶¶ 30-32), only Hughes Marine Contracting can release the crane and other equipment.  This failure to join and name a necessary party is fatal to the likelihood of Plaintiff succeeding on the merits.

Finally, contrary to Plaintiff's claims that there are no liens or court orders or lawsuit preventing or encumbering the return of Plaintiff's equipment (Compl. ¶¶ 41-42), as discussed in Section II, *infra*, RVM has asserted an automatic lien pursuant to Section 180 of the New York Lien Law, there are now counterclaims seeking significant amounts in damages in excess of $1.6 million, and Plaintiff has filed the instant cross-motion seeking an order of attachment pursuant to CPLR 6201, and a maritime lien pursuant to the Supplemental Maritime Rules.

C.     **Plaintiff Has Not Suffered Any Irreparable Harm**

As with its inability to show a likelihood of success on the merits, Plaintiff cannot establish that "extreme or very serious damage will result from a denial of preliminary relief," as is required to Plaintiff to obtain this relief.  *Cacchillo*, 638 F.3d at 406.  Plaintiff's affidavit and papers in support of its Motion for a preliminary injunction is utterly devoid of any facts supporting the requirement that its alleged injury be actual and imminent. *See, e.g., Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) ("irreparable harm must be shown to be actual and imminent"). Nor can Atlantic Pile make this showing.  Despite taking the extraordinary step of moving for emergency relief, Plaintiff abandoned the project in the middle of March 2021 and Atlantic Pile did not move for an order to show cause in the New York Supreme Court (Kings County) until June 8, 2020 and it waited three weeks since the action was removed to file a motion seeking similar relief in the Eastern District of New York.  Clearly, despite its vague and conclusory

8

allegations of "irreparable harm" and inability to enter into contracts (Compl. ¶¶ 37-38; Merlette Aff. ¶ 35), Plaintiff has been able to operate its business for the last five months.  There is clearly no urgency, which is an anathema to a finding of irreparable harm. *See, e.g., Kamerling*, 295 F.3d at 214 ("irreparable harm must be shown to be actual and imminent").

Here, by Plaintiff's counsel own admission, Plaintiff is seeking monetary damages or damages that can be easily calculated through an award of money.  *See* Campbell Aff. (Dkt No. 10), p. 5 ¶ 4 ("This is a simple Civil Lawsuit whereby my client feels he is entitled to money damages.  *Defendant's{sic]* also feel that they may be entitled to money damages.")  Based on this admission alone, preliminary injunctive relief is inappropriate.  It is well settled that "[w]hen a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir. 1991)). Plaintiff's own request for monetary relief—including an estimation that renting this equipment costs Plaintiff $5,000-$15,000 per week (Merlette. Aff. ¶ 38) for use of equipment, loss of rental income, and attorneys' demonstrates that money will make it whole.  *See, e.g., Diamond v. Gemological Inst. of Am.*, 2012 WL 12874273, at *2 (S.D.N.Y. Nov. 14, 2012) (pleading monetary damages renders "nonsensical" its argument that money will not make it whole.).

Additionally, Plaintiff's allegations are vague and contradictory; they certainly do not support the drastic award of preliminary injunctive relief.  Plaintiff does not offer a single supporting document showing an actual business opportunity or project that it lost.  Similarly, Plaintiff does not quantify how much, if any, actual business it has lost.   Here, Atlantic Pile simultaneously alleges that it is "unable to conduct business and engage in securing future construction projects without the return of its equipment tools, and materials," (Compl ¶ 38), while

9

also alleging "upon information and belief" that "plaintiff has been unable to rent of lease any of the equipment held by defendant's." (Compl. ¶ 39.)  Plaintiff cannot simultaneously use the equipment for its own projects while renting it to other contractors.  Such speculative allegation of a loss of a certain percentage of business do not constitute irreparable harm.  *Reuters Ltd. v. United Press Intern., Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) ("Irreparable harm must be shown by the moving party to be imminent, not remote or speculative and the alleged injury must be one incapable of being fully remedied by monetary damages."); *See, Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.*, 1986 U.S. Dist. LEXIS 22175, 1986 WL 13950, at *11 (E.D.N.Y. Sep. 9, 1986) (no irreparable harm where sale of beers at issue constituted between 17 and 29 percent of distributor's total sales); *Lanvin, Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 193 (S.D.N.Y. 1990) (loss of 10 percent of gross sales not irreparable harm); *Litho Prestige v. News America Pub., Inc.*, 652 F. Supp. 804, 807 (S.D.N.Y. 1989) (loss of 4 percent of business does not constitute irreparable harm).

Finally, it does not follow that Plaintiff will suffer an irreparable injury merely because it has pled its claim as one for specific performance seeking return of its crane and other equipment.  See, "Wherefore" clause of Complaint; Campbell Affirmation (Dkt. 10) p. 5 ¶ 6.  Plaintiff conflates the two inquiries, and the "fact that [a plaintiff] may ultimately be entitled to specific performance does not govern its entitlement to a preliminary injunction." *Westchester Fire Ins. Co. v. DeNovo Constructors, Inc*., 177 F. Supp. 3d 810, 813 (S.D.N.Y. 2016).  To conflate "the ordinary remedy of specific performance and the extraordinary remedy of a preliminary injunction" would "create a per se rule that would eliminate the crucial 'irreparable harm' branch of the test for preliminary injunctions."  *Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1151 (S.D.N.Y. 1990). Plaintiff fails to meet that test, which is the "single most important prerequisite

for the issuance of a preliminary injunction." *Robins v. Zwerner*, 713 F. Supp. 2d 367, 374 (S.D.N.Y. 2010).

      **D.**    <u>The Balancing of Equities Does Not Favor Plaintiff and There is No Public Interest in This Mandatory Injunction</u>

Plaintiff cannot establish that the balance of hardships tips in its favor. Not only would the mandatory injunction upset the status quo, it would force Plaintiff to find new tools and would put the substantial monetary damages that it seeks against this foreign corporation—Atlantic Pile—in a precarious position. The extraordinary and inappropriate nature of that request for ultimate, affirmative relief is further compounded by the fact that Plaintiff has shown no irreparable harm or likelihood of success on the merits. *Doe v. Paychex, Inc.*, 2020 WL 219377, at *8 (D. Conn. Jan. 15, 2020). Plaintiff has admitted in his affidavit and in the affidavit of his attorney that this is a dispute about money. Plaintiff's real motive—to offload the burden of its monetary obligations and obfuscate any assets so he and Atlantic Pile are judgment proof—is not a legitimate basis for a mandatory injunction. Atlantic Pile has been able to maintain its business for the past five months and therefore the balance of the equities either favor the RVM Defendants or are equal among the parties. Because the balancing of the equities for this mandatory relief that Plaintiff is seeking is not "decidedly greater" than the harm it will cause RVM Defendants, the status quo should be maintained and the preliminary injunction should be denied. *Ina Bus. Machines Corp. v. Johnson*, 629 F. Supp. 2d 321, 333 (S.D.N.Y.), affd 355 F. App'x 454 (2d Cir. 2009).

Moreover, Plaintiff cannot satisfy the requirement for a mandatory injunction that the preliminary injunction be in the public interest. This case is a dispute among private parties and does not meaningfully implicate the public interest. *See, Dong v. Miller*, 16-CV-5836, 2018 U.S. Dist. LEXIS 48506, *42 (E.D.N.Y Mar. 23, 2018); *Greenidge v. Allstate Ins. Co.*, No 02-CV-9796 (JCF), 2003 U.S. Dist. LEXIS 21733, 2003 WL 22871905, at *3 (S.D.N.Y. Dec. 3, 2003). To the

11

contrary, as discussed in more detail below, it is in the public interest that entities, such as Atlantic Pile meet obligations to creditors and other stakeholders, and it is in the public interest that Atlantic Pile not be allowed to dissipate its assets to satisfy any judgment that the RVM Defendants receive. *Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*, 543 B.R. 78, 120 (S.D.N.Y. 2016). Accordingly, this final factor undisputedly points in the RVM Defendants' favor.

## II. THE PRELIMINARY INJUNCTION MUST BE DENIED BECAUSE IF WOULD NULLIFY THE AUTOMATIC LIEN ASSERTED PURSUANT TO SECTION 180 OF THE NEW YORK LIEN LAW

On August 3, 2021, RVM filed counterclaims asserting a lien against Plaintiff's equipment—the very equipment that is seeking to have returned with this application for a preliminary injunction—pursuant to New York Lien Law § 180.  If this preliminary injunction were granted, it would invalidate and nullify the valid lien that RVM obtained on the equipment. Accordingly, preliminary injunctive relief is inappropriate.

New York Lien Law § 180 states that:

> A person who makes, alters, repairs or performs work or services of any nature and description upon, or in any way enhances the value of an article of personal property, at the request or with the consent of the owner, has a lien on such article, while lawfully in possession thereof, for his reasonable charges for the work done and materials furnished, and may retain possession thereof until such charges are paid.

Here, RVM has properly alleged and demonstrated that  it enhanced the value of Plaintiff's personal property—the Kobelco crawler crane—by spending over $22,000 to repair it through its affiliate, Ultimate Truck & Equipment Repair, Inc. ("Ultimate Truck"). Counterclaim ¶ 33; Manetta Aff. ¶ 36.  Ultimate Truck is owned by a co-owner of RVM, Joey Goldberger, who performed the repair work on the crane.  *Id.*  Plaintiff never paid for these repairs. *Id.* ¶¶ 33, 74.  Accordingly, pursuant to the explicit rules of Section 180 of the

12

New York Lien Law, RVM has a lien on such equipment while it is in RVM's possession

and RVM may retain possession thereof until such charges are paid.

### III. THE COURT SHOULD GRANT RVM DEFENDANT'S MOTION FOR AN ORDER OF ATTACHMENT

Plaintiff seeks an order of attachment pursuant to New York CPLR § 6201(1) and (3),

which is a remedy available in federal court pursuant to FRCP 64(a).  *Capital Ventures Int'l. v.*

*Republic of Argentina*, 443 F.3d 214, 218–19 (2d Cir. 2006).  CPLR 6201 provides that an order

of attachment is available when "the defendant is a nondomiciliary residing without the state, or

is a foreign corporation not qualified to do business in the state."  New York CPLR 6201(1).  CPLR

§ 6201(3) provides that attachment may be granted to a plaintiff who has demanded a money

judgment, when the defendant, "with intent to defraud his creditors or frustrate the enforcement of

a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or

secreted property, or removed it from the state or is about to do any of these acts." CPLR § 6201(3).

To obtain an attachment under CPLR § 6201(1) and (3), a plaintiff must also meet the

requirements of CPLR § 6212(a), demonstrating "that there is a cause of action, that it is probable

that the plaintiff will succeed on the merits . . . and that the amount demanded from the defendant

exceeds all counterclaims known to the plaintiff."  *Capital Ventures Intern.*, 443 F.3d at 219

(quoting CPLR § 6212(a)).  Under this statute, an order of attachment may be granted before the

adjudication of plaintiffs claims if certain conditions are met.  *See, e.g., ITC Entertainment Ltd. v.*

*Nelson Film Partners*, 714 F.2d 217, 222 (2d Cir. 1983) (acknowledging that an attachment under

CPLR § 6201 is to secure a prospective judgment).  In other words, the plaintiffs are not required

to show that they have a judgment "in hand" before they are entitled to an order of attachment.

Under CPLR § 6212, an order of attachment may issue where the moving party shows that there

is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more

grounds for attachment provided in Section 6201 exist (here, plaintiffs move for an order of attachment under 6201(1) and (3)), and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.  *See, JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.,* 306 F.Supp.2d 482, 484-485 (S.D.N.Y. 2004).

Here, Defendant Jeffrey Merlette is a non-domicilliary, residing in New Jersey. By Plaintiff's own admission, Atlantic Pile is a New Jersey Corporation.  Accordingly to the New York State Department of State website, Atlantic Pile is not qualified to do business in New York state.

The Counterclaims seek damages in excess of $1,000,000—damages that far exceed any claim purportedly set forth in the Complaint (which RVM Defendants still maintain fail to set forth a complaint).  Of note, the Counterclaims set forth causes of action for fraudulent inducement, unjust enrichment, breach of contract, and a lien pursuant to New York Lien Law § 180 (the "Lien Law Claim").

With regard to the Lien Law claim, RVM has demonstrated the likelihood of success on the merits in Section II, *supra.*

Relatedly, with respect to the unjust enrichment counterclaim, RVM has alleged that RVM outlaid considerable money in excess of $176,000-- $86,000 to store Plaintiff's unusable steel that it has refused to remove from the Project site, $22,000 to repair the crane at issue (Mannetta Aff. Ex. C), and $23,000 to ship Atlantic Pile's equipment (Mannetta Aff. Ex. B)—money that Atlantic Pile and RVM should have paid in the first instance but RVM could not afford further delays as a result of Atlantic Pile's conduct.  This claim, alone exceeds the value of Plaintiff's claim in the Complaint.

14

RVM has also proven a likelihood of success on the merits of its breach of contract and fraudulent inducement claims.  Plaintiff admits that it had a valid and enforceable contract to perform work for RVM in constructing the bulkhead. (*See* Compl.   ¶¶ 24-25 (containing allegations of a contract and change order); *see also*, Counterclaims ¶¶ 59-63.)   Atlantic Pile abandoned the project and further admits that it was unable to perform the work, including the installation of the steel beam into the soil, it was retained to perform on the Project.  (Compl. ¶ 22, Counterclaims ¶ 43-45.)  As a result, Plaintiff had to hire a substitute sub-contractor on a rush basis who charged RVM $17,000 per day or a total of $917,300. Counterclaims ¶ 46. Additionally, Atlantic Pile provided RVM with corroded, rusted unusable steel for the Project and as a result Plaintiff had to spend in excess of $400,000 to replace the steel Atlantic Pile offered on a rush basis.  *Id.* Accordingly, Plaintiff has a strong likelihood of succeeding on its breach of contract claim.

Finally, Plaintiff was only hired based on certain misrepresentation of present fact that it made to the RVM Defendants.  Specifically, Plaintiff misrepresented its experience saying that it had performed 8-9 similar projects on bulkheads.  It misrepresented how many employees it had and it misrepresented the types of machinery it had in its possession.  RVM relied on these misrepresentations, which ultimately caused RVM to retain to Atlantic Plaintiff.  Unbeknownst to RVM Defendants, all of Atlantic Pile's representations were untrue.  RVM never would have hired Atlantic Pile but for these misrepresentations and RVM was damaged after Atlantic Pile was unable to perform the work it was retained to perform.  *See* Counterclaims ¶¶ 13-20; Mannetta Aff. ¶¶ 15-20.

This order of attachment is necessary based on equity and good conscience to protect RVM to ensure that it gets its money for repairing the crane and shipping the equipment to the Project

15

site. Failure to award this order of attachment will give Atlantic Pile a windfall—a repaired crane at RVM's expense. Accordingly, as Atlantic Pile is a New Jersey corporation not authorized to do business in New York, Mr. Merlette is a non-domiciliary and resident of New Jersey, and RVM has demonstrated a likelihood of the merits on Counterclaims that far exceed any claims in the Complaint, an order of attachment is necessary and proper pursuant to CPLR 6201(1).

An order of attachment is also available pursuant to CPLR 6201(3), which states that an order of attachment is available that:

> the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts.

CPLR 6201(3).

RVM has already demonstrated its likelihood of success on the merits and that the amount in controversy of its counterclaims exceed the value of Plaintiff's claims. Atlantic Pile has already admitted that it intends to remove the property at issue from the state, at which point he can sell it or hide it. In both Jeff Merlette's affidavit and Atlantic Pile's counsel's affirmation, they state that they intend to move the equipment at issue back to Perth Amboy, New Jersey. (Merlette Aff. ¶ 29; Campbell Aff. ¶ 5.) RVM has already demonstrated that Atlantic Pile has already made several specific misrepresentations regarding its equipment, employees, experience, and capacity, in order to fraudulently induce RVM to hire it. After convincing RVM to spend $22,000 to repair Plaintiff's crane, return of the crane—which Plaintiff portrays as its only piece of equipment (Compl. ¶ 38), would allow Plaintiff to avoid the substantial judgment that it will face if RVM is victorious on its counterclaims which is likely. Accordingly, as with CPLR 6201(1), an order of attachment is appropriate under CPLR 6201(3).

## IV. RVM IS ENTITLED TO A MARITIME LIEN PURSUANT TO THE SUPPLEMENTAL MARITIME RULES

In addition to an order of attachment pursuant to CPLR 6201 and an automatic lien under New York Lien Law § 180, RVM is also entitled to a maritime lien attaching and garnishing the Plaintiff's crane and other equipment pursuant to the Supplemental Maritime Rules, Rule B. Supplemental Maritime Rule B states:

> (a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Under the Supplemental Maritime Rules, "an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).

Here, the Agreement at issue that Atlantic Pile breached was a maritime contract for the construction of a bulkhead abutting navigable waters and therefore, RVM has a valid admiralty claim. The federal courts have exclusive jurisdiction to hear these maritime and admiralty disputes seeking garnishment of property. *See also, Kilfoil v. Ullrich*, 275 A.D.2d 53 (N.Y. App. Ct. 2d Dep't 2000) citing *Knapp, Stout & Co. v McCaffrey*, 177 U.S. 638, 641-642 (1900)("The federal courts have exclusive jurisdiction of in rem maritime actions.") Mr. Mannetta's affidavit demonstrates that he has conducted due diligence, including searching the phone book and internet, and Atlantic Pile cannot be found in the district, but its property—the crane and equipment—is located on a barge owned by Brian Hughes in the district. (Mannetta Aff., ¶¶ 7-9, 50, Ex. A.) By Plaintiff's own admission, it is a New Jersey corporation located in Perth Amboy, New Jersey. (Merlette Aff.¶ 2.) Finally,

17

there is no statutory or maritime bar to RVM's lien. Accordingly, the Court can issue an order garnishing Plaintiff's equipment pursuant to Supplemental Maritime Rule B.

## <u>CONCLUSION</u>

Based on the foregoing, the Court should deny Plaintiff's request for a preliminary injunction and grant RVM Defendants' request for a maritime lien pursuant to the Supplemental Maritime Rules and an order of attachment pursuant to CPLR 6201.

Dated: New York, NY
            August 3, 2021

By: _____
    Adam S. Katz, Esq.
    GOLDBERG SEGALLA LLP
    *Attorneys for Defendants*
    *Ralph Manetta and RVM Marine Construction*
    711 Third Avenue
    New York, New York 10017
    Tel: 646.292.8700
    akatz@goldbergsegalla.com

18